MZM Construction v. NJ Bldg Laborers Statewide Benefit Funds MZM Construction v. NJ Bldg Laborers Statewide Benefit Fund So, throughout that time, I would just say that what you have there is at least, you know, a half million dollars or $550,000 worth of work contributed to CBA rates to the funds. It's certainly indicative of a contract relationship, that there is work being done under the contract. The point of the audit was to determine, you know, that if the work reported to the funds and paid for by MZM was everything that they owed. I mean, that was the point of the audit. I'd also note that MZM did submit to the audit, which was, you know, pursuant to the CBA, and the audit findings reflected contributions that were made, contributions that were not made for work that, you know, in the fund's view should have been done under the CBA. Now, if MZM disagreed with any of that, certainly they had points, but I guess our point would be, you know, all of those disputes and their defenses as far as, well, this work was CBA and this work was not, and we shouldn't have to be paid, we shouldn't have to pay the benefits for certain types of work. You know, they can make those points, and they may have valid points, but those points should have been raised to the arbitrator, given the fact that the CBA in question, which they undisputedly were working under, there's $180,000 worth of reported work that they did just during the audit period. So it's not like they weren't working under the CBA during the audit period. So obviously some of that work is subject to this express arbitration clause, the arbitration clause. They're claiming that they worked under the SFA, which incorporated the CBA for one project from 01 or 02 to 04, right? Well, I know that that's their contention, but that is not the language of the agreement that they signed. It's not the express language of the agreement that they signed, right off the bat saying that it's a single job agreement. That's belied by the fact that there's a time duration on the agreement. The short-form agreement is a single sentence. The only language on it says, essentially, I'm an employer. I want to work union to increase my job opportunities. And so as a result, I am agreeing to be bound by the CBA as a whole for the time period of, in this case, the two signs, 1999 to 2002, then 2002 to 2005. Now within that CBA, and that's a validly incorporated CBA, I don't think there's a contention that it wasn't validly incorporated. Within that CBA, along with the express arbitration provision, is an evergreen provision. And evergreen provisions obviously have been upheld and replete case law in the Third Circuit at this point. And also if there is an issue with the enforceability of the termination provision or whether that evergreen provision took effect, that's a matter for arbitration. That's a matter inside the contract, and those types of disputes are committed to the arbitrator. Counsel, let me just ask a question about the incorporation because you seem to take it as a given that the CBA was validly incorporated. Did I hear that right? Yes. All right. Well, it was my understanding that MGM was saying it wasn't validly incorporated because under New Jersey law, specifically the Alpert decision, and I'm quoting from that case, the party to be bound by the terms has to have knowledge of and assent to the incorporated terms. And I thought that MGM pleaded that it didn't have knowledge and assent to what the CBA's terms were. Okay. Well, I would just say as far as the resort to state law, it is true that state law standards are applied to contract provisions, including arbitration provisions just like any other contract provision. However, in this case, the fact that there is a specific delegation provision, that's specific in the CBA, which delegates the question of arbitrability to the arbitrator. Under the FAA, the FAA gives great weight to that provision, to the delegation provision, and says that those matters are arbitrable unless a complaint makes a specific challenge to that delegation provision. But I thought Ms. Perry, didn't MGM plead that they were unaware of the terms of the CBA, that to the best of her knowledge, she was relying upon the representation that this was a one-shot deal. I mean, I understand that you think that that's not true, but my point here is that if we have to accept that as true at the pleading stage, didn't the district court properly make this a matter for discovery, that there needs to be some discovery, that the case still might end up in arbitration, but at least there needs to be some discovery about that. Well, my response would be as far as her pleading that, you know, whatever her understanding of the agreement might be, that the facts that she pled are not sufficient to overcome her obligation. And, you know, one fact that is agreed to by all parties and was noted by the judge in his opinion and at oral argument is that this is a sophisticated business owner. This is a sophisticated operator. She's familiar with unions and she has the duty to understand what she is signing. If she's signing an agreement and actually Judge McNulty notes this specifically in his comments at oral argument, he says, you know, she understands what a collective bargaining agreement is. She understands that there's something bigger at play here. And that understanding is what's determinative here. Not that knowledge is what's to do with her. Did Mr. Taylor give her a copy of the CBA? I have. Oh, did he give her a copy of the CBA? I went in April, 2002 when she signed the SFI. I do not have, I don't have facts as to whether or not she was given a copy of the CBI. I know she says that. So isn't there a distinction to be made between knowing there's a CBA and knowing what the CBA says? Well, I would just say that there may be and that that may be significant for, I would say that, you know, that's something that she should understand. And before she signs an agreement incorporating a broad CBA, I mean, as someone who obviously knows the implications or at least some of the implications of operating under a CBA and she's looking at an agreement, all it says is I'm agreeing to be bound by a CBA for the next three years. Uh, that is due diligence that she should have performed and she's going to counsel that, that was that gets back to my question about Alpert. That's a caveat emptor standard. And what I just quoted from Alpert is very favorable. I think to me, the party that doesn't want to be bound by the incorporated agreement, it says that the party to be bound has to have knowledge of and a sense to the incorporated terms. So consistent with what judge Restrepo and judge Amber were just asking you, if she was never provided with the CBA and she claims that she didn't know how long it lasted. She didn't know what it said about arbitration, et cetera. Then how can you satisfy the Alpert standard? Or is it your argument that you need not satisfy the Alpert standard? Well, I don't think what I'm arguing is necessarily in conflict with the Alpert standard. Uh, tell us how she had knowledge and a sense of the incorporated terms in the CBA that Mr. Taylor never gave and she never asked for. Well, well, I guess what I'm saying is when she signed that clearly word, it's a short form agreement and, and she, and she agreed to assent to its material terms, which again, is just incorporation of the CBA. Uh, she is taking on, uh, the obligations of that agreement. And, uh, she, the, the Alpert decision, uh, says, okay, well, she has to have a knowledge of, but that's her duty to get that knowledge before she puts her name on a contract. Uh, if, if, if you can avoid, uh, the terms of a contract, uh, not withstanding how simply or clearly worded, uh, that the contract might be that you sign simply by saying, well, I thought I was, uh, signing something different than obviously, uh, it's going to be tough to enforce a contract and specifically a CBA and arbitration clause, uh, in, in, in any circumstance or any circumstance where, uh, the, the signee says, well, you know, I just, I thought I was finding something different. And I would just say that, uh, that, that, that balance of duties are as far as, uh, you know, uh, making it the, uh, uh, the union's responsibility to make sure that the, uh, MDM does it to due diligence before signing a very clearly worded document, uh, that does not comport, uh, with the obligations and the deference to arbitration, uh, language and arbitration provision. If you come up to me and say, Hey, you're working on this project and you need to sign an SFA because you got union workers here. And the, and according to the, uh, MGM, it was told it was just this one project and you sign the, the one page, you hand it back. Uh, no, isn't it really the responsibility of the union to give over the CBA, which says it affects you. Supposedly it gives you a number of benefits and you're saying, I just want to make sure you understand here's, here's what the rules of the road are. And, but the bottom, even, even if not, even if it was her responsibility, if he told her it was just for this one project, Life stops in 2004, doesn't it? Well, I would say as far as, you know, first of all, the, the time period, 2002 to 2005, I mean, it, that in and of itself belies, uh, what she was represented. She was told about the nature of the contract. I mean that in and of itself, I would think would she, she complied with that particular contract with respect to the, the union requirements for terminal three of the airport. She's an open shop. The person who runs runs an open shop. Some unions work, some non-union work. Right. Well, I mean, that's, that is her representation now as to how she does her work, that she works union when she has to, and she, you know, works non-union when you, when, when she doesn't. Uh, but I would just say that is not the, that is not consistent. That's not the obligation of the contract that she signed. It's not, it's the, the contract that she signed, uh, the CBA calls for use of CBA or union labor and payment of wages and, uh, and, and fringe benefits at CBA rates. Whenever you perform, uh, work under the CBA jurisdictional sections. When did she sign the CBA? Uh, she, she never signed the CBA. She only, well, that's my, that's my point. You just said she signed the CBA and she did. She signed an SFA that incorporated the CBA, right? Correct. Okay. So we need to be precise about that because this comes down to whether or not she is chargeable with all of the language in the incorporated CBA, right? Correct. And you're saying under New Jersey law, anytime anyone signs a document that's very curt and very basic, it says, oh, by the way, what you're signing here incorporates other documents, perhaps really long and complicated documents. Then it's incumbent upon the signer to be familiar with, understand, and adhere to everything in that longer, more complicated documents, right? Correct. Okay. You think that's New Jersey law and I'm not sure that's right under Alpert because it seems like Alpert is pretty favorable to the person that signs the, the short document or document that purports to incorporate because Alpert says that that person's neat person needs to have knowledge of an assent to in terms of the incorporated documents. And, and I guess just to clarify, as far as the New Jersey law, she may well have a case for a limited application of this contract under New Jersey law. My point is that that argument needs to be made to the arbitrator and, and, and that's under the federal arbitration act and the obligation that time out. Why is that? Well, you get, let's, you're relying on rent to center, right? Correct. So it, and essentially as I understand, rent a center and you look at notes one and two, if you're talking about a formation, it's for the court to decide. If you're talking about enforceability of a particular provision, in this case, the delegation provision in the CBA, then you're, that's for the arbitrator to decide. But here there's a gateway claim. To use the court's term as to whether an actual contract was formed. So, isn't that for a court to decide? Well, under certain circumstances, it is my contention is that those circumstances don't exist here. And I, here's the question. Is that because she didn't specifically plead that in the complaint? Is that your position? Well, under rent a center and McDonald and the, the FAA obligations in terms of pleading. Yes. That that, that there was no specific challenge to the, to the delegation provision. Correct. Her, her arguments with respect to formation or, you know, she alleges fraud in the execution. Those, those arguments had to be targeted at the, the actual delegation provision. And had, had she done that, had she done that, would her analysis be different? Yes. Under rent a center and under McDonald. Yes, absolutely. If she had pleaded that and, and this isn't, you know, it's not just a, a formality. It's not just, you know, it's not just language for the sake of the language, what that language in, in rent a center and, and with McDonald, when it talks about the requirement to specifically challenge the delegation clause, when it exists, which is, which it does here, that what that gets at is the bargaining between the parties when the, when the contract is formed and whether or not, you know, a specific arbitration provision or a specific, you know, delegation provision was the, was referenced by the parties when they signed the short form agreement in this case. So for instance, if where, where was the reference when they, when, when Mr. Taylor handed her the one page in April, 2002, just so you understand that your, your, this document that's incorporated here has refers to arbitration. Just want to make sure you understand that if there's any disputes, we have a right to go to arbitration. Never said that. Did he, he did not. However, if, if he had either said, or if she had said, Hey, listen, I'll find it. I'm looking at this agreement. You're telling me it's for one job. I'm seeing CBA from 2002 to 2005. Okay. So just, just so we're clear, I, I want access to the courts to determine, you know, if, if, if something goes wrong with his agreement, we disagree on how this works out. I want access to the courts. And he, and, and, and Taylor responds. Absolutely. Nothing stands. Nothing stands in the way, even if it's not committed to writing. Okay. Even I believe it's a McDonald refers specifically to a fraud and inducement claim that specifically targets the delegation provision gets you to court review. But, but there is no, there, there, there is no contention that, that was the, that was the product of their initial negotiations. And there's no reference to the delegation clause in her complaint or in their briefing. There's general references to the arbitration clause or the, you know, fraud in the execution, alleged fraud in the execution with respect to the contract as a whole. But there is no specific reference to the delegation clause. And under a rental center and the FAA that says that, yes, contracts are creatures of state law. However, the parties can contract specifically as to what the scope of arbitration will be. And when they do that, uh, that federal courts have to defer to it. You're right. Parties can contract specifically, but there's nothing specific about that. Noted to her. She's claiming, uh, uh, Ms. Perry on behalf of MGM, that she was unaware of the delegation provision in the CBA. And she's claiming that there is fraud in the execution. Let me start off. What, what do you understand the difference to be between fraud in the execution and fraud in the inducement? Um, well, I would say that the, uh, kind of textbook just very straightforward and, uh, kind of absurd, uh, uh, fact-based argument for fraud in the execution would be you negotiate a contract. Uh, you, you sit down, the two contracting parties sit down to sign the contract that they've negotiated. Uh, the parties even read the contract and, and gone through and think they know what they're signing. And then at the last second, uh, the one party says, uh, Hey, look over there. And while they're distracted, uh, they put a, they put a different contract in their face and they signed that contract. And so that's what fraud in the execution gets at. There is no, there is no meeting of the minds. There is no basis to enforce that contract because the contract that they signed is different than the contract that they thought they were signing. The contract that was put in front of them, the contract that they had the chance to review and understand the terms. They went through all of that due diligence. And at the end, uh, by, you know, whether it's bad faith, bad faith, or, uh, you know, a surreptitious act, uh, some sort of absurd construction of events. Uh, they end up with a contract different than they thought they were signing. So there is no assent in that case. That's fraud in the execution. Uh, now that's distinct from, uh, what our position is that we have here and that's fraud in the inducement. And the cases are very, uh, specific fraud in the inducement is when you have an oral assertion that is contrary to the, uh, clear and express language that you have in front of you. If you're sitting there with a clear language in front of you and you're told by your contracting party, I know it says that, but really it's this. So just go ahead and sign it. And you sign that agreement. That's fraud in the inducement. And it's not saying that that means they are, the contract is binding, but what it does say is you have agreed to a contract. You have agreed to a contract. Uh, and that contract contains an arbitration provision. And so your defenses to that contract are arbitrable. And I think the difference between the two really gets to, and in fact, it's in the fraud in the execution cases, reasonable opportunity to know what you're signing. Did you have a reasonable opportunity to know what you're signing in the case? So it's your position. Sure. Presented with the short form agreement, the airport saying this, we're about to pull the guys from this job. Unless you sign this, there's a passing reference to a CBA and that's a reasonable opportunity. Well, the one thing I would say, that's what you want, right? Well, no, the one, the one, uh, uh, issue I would take with the facts, uh, that, uh, that you put forward there, as I think it overstates the amount of coercion that even by her pleadings was present. I, you know, I don't, there's no reference in a sign this in 24 hours or we're pulling men or, I mean, the, what it says is to work on this job, you have to, you know, you have to find the short form. First of all, she's already on the job. So she apparently has been working without, uh, signing this, this short form to this point. Uh, second of all, uh, you know, there there's, I don't think it's an unreasonable, um, um, expectation that she performs the due diligence of saying when presented with an agreement and she's being told that it's something different than, uh, the plain language says that it is that she says, Hey, it says I'm, uh, signing this agreement in full. Um, you know, I need to read it before I put my name on that. And there's nothing in the pleadings that suggest that, you know, there was that coercive element or there was that element of time or that element of, uh, of time pressure. And obviously in the cases where fraud and the execution was found, there is that element, uh, you know, in, uh, um, fine mining. There's, you know, the element of, uh, uh, the dissolution of the company. And the, the, the principle is presented with a, uh, essentially a blank signature page, uh, and told, listen, you have to sign this, uh, you know, prior to the wind up prior to the distribution of assets. Uh, and, and, you know, this is what you're signing onto. You know, there is, there is no agreement present. There is no opportunity to read those terms that's brought in the execution, uh, in JF, which I know the, the, uh, uh, district court took, uh, a lot of, uh, note of, and which was pretty prominent in respondents, uh, uh, pleading. There's not the element of compulsion, but there is the element similar to what I was describing for, uh, of, you know, there, the parties had a history of signing single job agreements. They were signing single job agreements, their past practice, their, their work was doing work, uh, pursuant to single job agreements. Then they negotiate another job. And these are the faxes found, uh, in, in that case, uh, they're negotiating another single job agreement. The negotiations are all targeted at single job agreements. And what is put in front of them is a full short form, not limited to a single job. And when it's presented to the signer, it essentially looks identical at it's, it's missing the one sentence. It's missing that one clause that limits the contract. And he signs it based on those assertions and based on the past practice of signing those single job agreements, which look nearly identical. Uh, the court found there that is brought in the execution because it's informed by the past, uh, relations of the parties, the past practice of the parties. In this case, the pleadings are that she worked for however long, I think 16 years or 10 years prior to finding, to signing the short form. Uh, and she says she worked, she was working union during that time, always on, you know, essentially handshake or oral agreement. Now you've got a, a specific writing, a short form being placed in front of you. And that short form says you're, you're agreeing to a CBA as a whole, that in and of itself, uh, should put her on notice as a conceitedly sophisticated, uh, uh, construction business operator that, you know, she needs to know what she's finding before she puts, uh, before she puts her name on it. Before you sit down and we've had you up for almost a half an hour as opposed to 10 minutes, the district court, all it suggested here is I'm going to put this on quote, a short leash to maintain the status quo. I need to have some time in order to make a call on this. What's wrong with that court is judge McNulty. A good judge is saying, I just, I need, I need to figure this out. This is not an easy matter of fully understanding the claims here. The facts that relate to the claims, how much she was aware of how much she wasn't. So why the appeal here? Uh, okay. So the, the reason for the appeal is because, uh, notwithstanding the fact that it's, uh, and I agree it's, um, you know, it's, it's reading it. It, it, it seems like a reasonable approach. Uh, and, and there's really two reasons underlying, uh, the challenge here. Um, one, notwithstanding the fact that it's identified as, you know, a short leash or an expedited, um, our, uh, discovery process into the facts surround the surrounding execution and, and essentially the facts to whether or not the contract is ultimately binding. Well, one, that, that, that is a, um, you know, that, that is a restraint of, of the arbitration. And, and particularly in the case, um, when you have, uh, the restraint of the arbitration, he's trying to figure out if there's an actual agreement formed, he's trying to follow the Sandvik case. And what, what Renner Center says, if you're going to talk about formation, you got to deal with it first. Well, and, uh, my, and, and my response to that would be that there may very well be, uh, formation issues. Uh, but in these circumstances, those, those are for the arbitrator. And that's, it's expressed in the delegation provision and, you know, if there was a contract formed with respect to the delegation provision, why don't you think about that? We'll get you back on rebuttal. And we've now had you up for over 30 minutes, uh, may keep rebuttal, uh, to three minutes, if that's okay with you. Uh, thank you, your honor. Okay. Mr. Magnelli. Thank you, your honor. May it please the court, Eric Magnelli on behalf of MGM construction. Um, I'd like to start right off the bat, uh, your honor, with echoing exactly what, um, judge Amber just mentioned that the district court at this point only determined that MGM is likely to prevail on the merits and that it would suffer irreparable harm. If it was a force to arbitrate as a non-signatory and it exercise this discretion and just press the pause button temporarily in joining arbitration until it could be presented with a better factual record after which the trial court could then determine whether or not MGM voluntarily waived its constitutional rights and agreed to arbitrate against the funds. The trial court did not rule yet whether or not arbitration will be granted or denied. It's simply exercise its discretion and maintain the status. Let me ask you a fact question. What kind of agreements does MGM usually sign with the unions? MGM usually, uh, MGM usually signs no agreements. They've had oral agreements throughout most of the course of its 26 year history. Um, the only agreement that large remembered signing was project only agreement in 2002. It turns out that she signed one in 1999 several years before, but typically there is just oral agreements and the union provides the laborers and they submit the remittance forms and they pay. That's typically what occurs. And that has been the course of performance throughout 26 years. Um, most of the work that MGM does is non-union and MGM has always been clear with the union that it will not be bound to a statewide CBA. Um, it wasn't until in 2001, one year after the, uh, the Newark airport, um, job was presented that the, the union, an individual who March Perry of MGM knew and, and thought trusted and maybe did trust, um, entered, uh, provided her with a project only agreement, which had to be signed at that moment, or the union would pull their jobs. And it was signed at that moment with the union still present. She did not receive a copy of the short form agreement. She was not provided any collective bargaining agreements. Um, let me ask you, where is it pled that she had to sign it right there? They're going to pull the guys. I was mentioned in her affidavit that it was presented at the job that unless the union had something on file that, um, that they could not provide union labor anymore. So she, they presented to her there. If she didn't, it, it was in her affidavit, your honors, which was also in the, in the verified complaint. Okay. Does her affidavit alleged that she was prevented from reading the 2002, uh, the, the CB, the CBA that was in effect in 2002, the affidavit does mention that she was never provided a copy of the 2000. Does the affidavit suggest that she was prevented in some way from knowing what the contents were of the CBA? No one barred her, your honor. No one said absolutely not. You are not. But the issue at the time was not necessarily the specific terms of the CBA. The question, the issue at the time was that the CBA would only be enforceable for this specific agreement. So whether or not there are any issues about specific terms of the CBA, um, it is irrelevant at this point. It's just whether or not the CBA back in 2002 would have bound MGM indefinitely. And at this point there is no dispute over any in particular provision of the CBA. And we don't even know at this point what provision of the CBA anyone would look at. We are simply just focused now with the arbitration provision. And just to, to bounce around with the CBA is what contains the arbitration provision, right? That is, that has been correct, your honor. And, and the funds keep mentioning the CBA arbitration provision and the CBA delegation provision. The funds are not seeking to an arbitration under the CBA. They are seeking arbitration under the trust agreement. The trust agreement does not contain a delegation provision. The trust agreement is what gives the funds permanent arbitrator JJ Pearson, the right to conduct an arbitration for delinquent contributions. That does not contain the delegation provision. The CBA is arbitration provision, which does contain a delegation provision is when unions and companies have a dispute. There's a particular procedure where at first the business manager gets involved. Then they go to the New Jersey board of mediations after 10 days, if it doesn't get resolved in which under those rules and procedures, presumably both parties would select the arbitrator. And it's in those cases when it's a union employee, or arbitration that that arbitrator that is picked between both parties does argues enforceability. That's not the case here. This is a trust document, delinquent contribution arbitration. So the CBA is arbitration provision is, is the quintessential red Heron. Besides from the fact that even if the trust agreement did have a delegation provision because the argument goes to the execution of the contract, not the validity of its terms that is something for the court to decide. And the court hasn't made the decision yet. The court has simply put it on hold until it could develop a fact, a factual record. All right. And just illuminate that for us a little bit. Council, what if, if we affirm here, what happens on remand? How do you expect this to play out? Or what are the potential ways it might play out? The parties have limited discovery on the entry into the agreement. We, we deposed Joe Taylor. If he's still around, we find out the course of performance and course of dealings between not only MDM and the union, but the union in general, we find out what happened back in 2002, what was their procedure for short form agreements. And then after probably a couple of depositions in an exchange of historical documents, the court has either, has a summary judgment motion to determine whether or not MDM waived its right under waived its constitutional right for a trial and whether or not an arbitrator will make the ultimate decision of whether or not MDM owes 230,000 in delinquent contributions. Even if, even if you get a trial, isn't it axiomatic that when work is performed on a prevailing wage job that you have to pay union benefits or is that not true? Well, if it's a prevailing wage job, they'd be, they'd be providing, a company would be providing the wages that essentially are, but it wouldn't necessarily be providing certain benefits to the funds. And the 230 grand that's at issue or apparently an issue is, is not about wages. It's all about fringe benefits. That is my understanding. It's not a hundred percent clear because we haven't gotten into the weeds of that yet. Your honor, we only received a notice of arbitration for $230,000, but we never received the specifics, which is another issue. I mean, essentially the funds are seeking to compel arbitration against an entity who never signed a CBA, signed one project only agreement back in 2002 and doesn't even know what the $230,000 is really about. Based on information from MDM and the unions, it appears that most of the information has to do with employers, I'm sorry, workers that worked on a non-union job and a federal job that did get prevailing wages. But I don't, I can't sit here and tell any of your honors what the $230,000 represents 70 grand, I believe is, is interest. But the, the, the, the one 60 or one 70, I don't know what it's for. You mentioned that if this goes back, you got to look at course of dealings, course of performance. So if we were to send this back, should we consider the 1999 SFA or the employer contribution reports, which the funds also allege incorporated the CBA? That's all evidence, your honor. Yes. That would all be considered and it would all be weighed. And ultimately the trial court would make a determination of what that means. The 1999 short form agreement as judge McDonald referenced. And as some of the cases referenced, well, you know, that could be evidence very well that it was only a single project agreement because if MGM is bound already to a collective bargain agreement with an evergreen clause, what was the need for the 2002 agreement in the first place? And if it's because, well, they always entered the short form agreements at the end of a, of a collective bargain agreement, then why wasn't there any after 2002? So evidence can, can sway both ways. It depends on however, the courts want to review it. And as far as the remittance reports, the remittance reports are clear. All that does is support the fact that backing up remittance reports are required under the labor management relations act without remittance reports legally, an employer cannot pay union money or the funds money. What those remittance reports do by incorporating the CBA in that particular report, it essentially says that the collective bargain agreement is in effect for these particular employees on these particular jobs during this particular time period. That's all that does. It doesn't bind. And there's no case law that binds a CBA for three, four years or indefinite because of a remittance report. So, but yes, that would all be evidence that, that the court can weigh to determine whether or not MGM, at least in this point is not on the hook for delinquent contributions, but is required to arbitrate a dispute. That is the initial focus, not whether or not we haven't even gotten to the delinquent contribution issue. Well, let me back you up for a minute, Mr. McNelly. Was there a specific challenge in your, in your pleading to the district court to delegation provision specifically? Specifically, it wasn't as specific as the case law may want, but it doesn't need to be because the, under the rent-a-center cases that hold and the line of cases that are, that state that you have to specifically reference the delegation provision. That is when it is presumed that there already is an underlying existing agreement, which is not the case here. MGM never conceded it entered into a CBA and in her affidavit, she acknowledged that. So your challenge, your challenge all along has been, there was never a deal. There was never a deal. And since there was never a deal, the case law that, that states, you must reference a delegation provision is implicable because that only goes if you just understood. I got it. Thank you. Okay. But second of all, as I mentioned earlier, there is no delegation provision in the trust agreement, and that is the issue for the arbitration, not the collective bargaining agreement. Has there ever been a previous arbitration between MCM and the funds? No, Your Honor. I know the funds have stated very shortly that there was, and they produced two documents that said report for arbitration. Those reports for arbitration were printed in December of 2018, which was after this litigation was filed, there was no arbitration date on it. So it looks to me that this was a report for an arbitration that was going to happen and never did. Marge Perry has sworn an affidavit. She has never attended any arbitration. The funds have not produced any arbitration award. There's no letter that says, please come on this day for arbitration in the past. There's absolutely no evidence of any arbitration except for these two documents, which were printed in December of 2018. So the short answer is no, Your Honor, there has never been any arbitration. Going back again towards the delegation provision, another reason why that's not applicable is because of the defense of fraud in the execution. A fraud in the execution defense is determined by the court, not the arbitrator, irrespective of the delegation position because it goes directly to whether or not there's ever a contract in the first place. And this case is classic fraud in the execution. Mr. Parsons gave one example of what fraud in the execution is. When someone does a typical bait and switch, yes, that is an extreme example, but that's not the typical example. In the cases that were cited in the brief, the typical example is the example that's here. Someone is presented with one agreement that they think is something else. There is no reasonable opportunity to review. They are not provided an entire collective bargaining agreement. They signed the agreement in the presence of the union. They don't take it home for a week or two. They are educated people. They are people who own companies that are construction workers. They are people who may know about collective bargaining agreements. They are people that have entered into project only agreements, but the agreement they signed is radically different than what they were led to believe they were signed. That is classic fraud in the execution. Isn't the key whether you are aware or not aware? In other words, if you are aware of what you're signing, and for example Mr. Parsons gave the example of somebody saying, eh, we're not really going to enforce that, then that's an inducement. If you're not aware, then it's an execution. That is 100% correct, Judge Ambrose. Fraud in the inducement cases are all the same. The parties sit down. They read the agreement. They read the terms, but the union says, oh, don't worry about that provision. We're not going to enforce it, and it turns out that they're enforcing it. That is fraud in the inducement because there is no dispute that the contract says what the contract says, and the parties assented to its terms. They just were potentially duped that someone would not enforce it. That's not the case here. This isn't the case where Marge Perry sat down with the short-form agreement, and sat down with the CBA and said, hey, wait a minute, Joe. Won't this bind me to a collective bargain agreement, and doesn't this cover ABCD&E, and doesn't this mean blah, blah, blah? And Joe says, oh, don't worry about it. We'll let that one go. This is not the facts of this case. If those were the facts, this might be a different issue. All right. Thank you. Any further questions of my colleagues? No. I have none. Thanks. All right. Thank you very much, Mr. McNally. Thank you, Your Honor. Mr. Parsons, I'm going to give you three minutes, and we're probably going to stick to it. Thank you, Your Honor. Just briefly. With respect to the Rent-A-Center analysis and whether or not there is a challenge to the agreement to scope, and counsel says, well, you know, that's not necessary because we're contesting the existence of a contract at all. And I think that's, you know, a hard argument to comprehend when you have the principal signature on two clearly worded contracts that incorporate a CBA. And then you have a subsequent business relationship between the two with contributions and, you know, half a million in contributions paid to the funds at CBA rates. There is a relationship here. There is a contract relationship here. The challenge is as to scope. And under Rent-A-Center, if there's no specific challenge to the delegation provision, that goes to the arbitrator. As far as he referenced the trust agreement, trust agreements are additionally incorporated by the CBA. The delegation provision still operates under the CBA. The trust agreements say that essentially they give the funds direct access to the arbitrator and the ability to appoint a permanent arbitrator. But it does not interfere with the prior arbitration provision. It just says that they don't have to go through the grievance provisions. You know, in closing, just as far as the fraud in the execution and the fraud in the inducement, the factors do not rise to the level of fraud in the execution, where it's justified to just basically eliminate an entire contract that was knowingly signed by both parties. There is not the misleading. There is no compulsion. Isn't that an issue for the district court to decide? Well, I would say that if the circumstances here do not rise to fraud in the execution, instead what you're talking about is a plainly worded agreement. The claim is that she was not aware of the provisions in the CBA, which were not given to her, sounds to me like that's something that needs to be sorted out by the district court. If she wasn't aware, should she have been aware? Or was she on notice that she should have? That's really not for us to decide, is it? Well, I would just say that as far as if you look at the fraud in the inducement case law versus the fraud in the execution case law, I mean, that is essentially what they're wrestling with. And that's the boundary that they're trying to patrol. But the bottom line is the district court never decided fraud in the inducement versus fraud in the execution because you appealed after the district court said, hey, I need some more time. So you never really got to that issue, did you? Well, basically what we're saying is that there is a clearly worded contract with her signature on it, and that that contract incorporates a arbitration provision. And again, we're not saying that none of these things are issues or that none of these formation defenses have any bearing or relevance. Usually we try to give the district court the first bite at the apple, and that never happened here. Well, I know in the usual case, that is the case. However, under Rent Center and McDonald, if you have a delegation provision that specifically commits issues of arbitrability to the arbitrator, then you can still get court review of those provisions, but they have to be challenged specifically in the complaint. And if they're not, just as a matter of course, the district court has no authority to review those types of complaints. All right. Thank you very much. Thank you. Thank you to both counsel for well presented arguments and we'll take the matter under advisement. Appreciate your being with us today.